Acme Elec. Co. *v.* Pa. Laundry Co., Appellant.

Argued October 16, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Arthur S. Minster,* for appellant.—Where there is no dispute as to the existance of a written contract and no ambiguity requiring explanation, its interpretation is for the court and not for the jury: Dunn v. Rothermel, 112 Pa. 272; Standiford v. Kloman, 234 Pa. 443.

*Edmund W. Kirby,* of *Morris & Kirby,* for appellee.

Opinion by Trexler, J., January 29, 1930:

This is an action of assumpsit brought by the plaintiff to recover the sum of $1,375, for making foundations and hauling and erecting certain machinery under an agreement entered into on or about the 29th day of January, 1927. There was no dispute as to this. The claim was met by a counterclaim in excess of the above sum. This was based on a writing, dated the 21st day of May, 1927, in which the plaintiff agreed to sell to the defendant for the sum of $7,150, one

Ames 18 x 22 Stumpf-Uniflow electric and steam unit, in first class condition, and "free from all mechanical and electrical defects" and capable under normal conditions to "deliver 192 K. W. at a power factor of 80% to bus bars." The defendant claims that this contract was broken, that the generator was "out of phase," and that the cylinder of the engine was cracked, that a two phase alternator was to be furnished and instead a three phase converted alternator was delivered. That it was impossible to satisfactorily change the contrivance from three phases to two. Defendant alleges that it was compelled to remedy these defects and that in doing so, it expended sums exceeding plaintiff's claim by $838.07. Defendant produced witnesses who bore out its contention that the alternator was in bad condition and did not do the work for which it was intended, that the "phases" were unbalanced and that the cylinder head on the engine was cracked. The testimony produced by the defendant, if believed, could abundantly prove that plaintiff did not do what it engaged to do.

When, however, we consider plaintiff's testimony in reply we are brought to the conclusion that necessarily the matters involved were for the jury. The plaintiff produced testimony to the effect that in the very writing produced by defendant's counsel, it appears that the unit in question was second-hand, having been used less than a year and designed as "three phase." The paper showing this was produced in connection with defendant's offer accepting plaintiff's bid. There was evidence that the matter of changing or reconverting the unit to a "two phase" was discussed by Franklin, defendant's authorized agent, and although he disclaims knowledge of the paper, there was testimony to the effect that it had been handed to him and of course, defendant having possession of it, is presumed to have had knowledge of its contents. That the change from

three phases was and could be successfully made was asserted by several witnesses.

The plaintiff claims that it did not undertake to supply a unit capable of operating defendant's plant; that the defendant's agent made a selection of this particular type from a number of specifications submitted; that the selection having a three phase was as stated before, to be changed to a two phase. Some witnesses testified that the generator developed all the power it was designed for; another witness saw the machine in place during the month of July twice, that he put it in operation, tested it, that there was nothing the matter with it and he found nothing wrong; another witness testified that the unit produced the power it was specified to produce and that the units of defendant's plant were too heavy for the size of the equipment selected by defendant's agent. It also appeared by testimony produced by the plaintiff that Franklin, the agent and engineer of the defendant company, admitted that he had miscalculated the power consumption of the plant. It was very evident that if the fault was Franklin's, the plaintiff is not responsible for the consequences. As soon as it delivered the machine for which the defendant bargained in good condition, capable of maintaining the power for which it was designed for a period of one year, it performed its part. The unit was to be operated under normal conditions and if the defendant's engineer made a mistake in calculating what quantity of power was required to run the plant, the plaintiff cannot be required to remedy the evils which may have resulted from the mistake.

The other complaint was that the cylinder head was cracked and that defendant was compelled to remove it and put in a new one. If defendant's witnesses are to be believed, this was in violation of the contract to the plaintiff to furnish a unit that was de-

signed to work well for the period of one year, but this testimony was minimized by the plaintiff. It was shown that this was a steam leak which developed after the machine had been running for a week or ten days, that the iron was spongy around the block and that the discharge would stop and would not show up for two or three days and then come on again, that it could not be remedied because the place where it was was not accessible without taking the machine apart, that it had no effect on its operation and was something which ordinarily could and did occur with any moulding castings, that the cylinder head was not cracked, but the iron being spongy occasionally allowed a small portion of steam to seep through and this did not interfere with the operation of the unit at all.

This was evidently the best reply that plaintiff could make under the circumstances and the jury believed it. The question was not one that the court below, or we, should decide. This was not a case for binding instructions. What the contract meant was for the court, but whether the imperfections alleged by the defendant actually existed was for the jury. The charge of the court was eminently fair.

The assignments are overruled and the judgment is affirmed.